THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* JOHN J. SULLIVAN, Respondent.

Second Department, May 13, 1935.

*Seymour B. Quel* [*Paul Windels,* Corporation Counsel, *Paxton Blair* and *Charles C. Weinstein* with him on the brief], for the appellant.

*James I. Cuff* [*James I. McGuire* with him on the brief], for the respondent.

HAGARTY, J. Article 22 of the Agriculture and Markets Law (Laws of 1927, chap. 207, in effect March 19, 1927) provides for the establishment of a department of markets in the cities of the State to assume control of local public markets and, among other things, to make rules for the government of market places (§ 261, subd. 3, § 269). Pursuant to these provisions and upon the requisite approval of the board of estimate and apportionment, on the 16th day of June, 1933, the department of public markets, weights and measures of the city of New York promulgated certain rules and regulations governing the conduct of city markets, including therein a provision requiring the registration and licensing of watchmen in such markets.

A license was issued to the defendant as a watchman in the Wallabout Market on the 1st day of July, 1933, but that license was revoked by the deputy commissioner of markets pursuant to instructions from the commissioner of markets on the 23d day of January, 1934. Nevertheless, the defendant persisted in continuing in that capacity and in securing payment for his services at the rate of fifty cents a night from farmer customers displaying their wares at the market. Although the defendant questions the reasonableness of the revocation, for the purpose of this appeal and in the absence of the appropriate license it will be assumed that that was a violation of the rules and regulations of the city department.

Article 22 of the law (*supra*) provides punishment for violation of such rules and regulations of a city department, viz.:

" § 270. When rules to take effect; punishment for violation. * * * A violation of such rules or the orders of the commissioner of public markets, which he is hereby authorized to issue in pursuance thereof, shall constitute a violation of this article and the commissioner of markets may revoke or suspend the license or permit of the offender to do business in any market heretofore issued by any other officer or hereafter issued by the department of public markets."

Although this statute provides for revocation within the discretion of the commissioner as a punishment for a violation, and perhaps because this result already had been accomplished and was futile as a punishment, it was sought to enlarge the offense into a crime. Accordingly, on the 1st day of August, 1934, an informa-

tion was filed charging the defendant with the commission of a misdemeanor in that he violated the aforesaid rules and regulations of the city department. The defendant was convicted after a trial before the Court of Special Sessions on the 19th day of November, 1934, but thereafter, and on his motion, an order in arrest of judgment was made by the court on the 17th day of December, 1934, on the grounds prescribed in section 331 of the Code of Criminal Procedure, namely, that the court was without jurisdiction of the subject-matter and that the facts stated in the information did not constitute a crime.

The appellants seek to justify the conviction on the ground that the violation here constitutes a misdemeanor under the provisions of article 3 of the Agriculture and Markets Law. It should be noted that the entire chapter consists of twenty-six articles having to do with the standardization and regulation of dairy and farm products, weights and measures and kindred subjects, under the jurisdiction of the *State* Department of Agriculture and Markets. Indeed, wherever throughout the chapter the word " department " is used it means the *State* department (Art. 1, § 2, subd. 1). The only notable exception to this general jurisdiction of the State department is to be found in the aforesaid provisions of article 22 dealing with " Departments of markets in cities." Article 3 of the law deals with " Investigation; practice and procedure; violations; penalties," all of which are within the jurisdiction of the State department generally. Nevertheless, the appellants invoke section 41 thereof, which reads:

" § 41. Violation of chapter a misdemeanor. Except as otherwise provided by the penal law, a person who by himself or another violates any of the provisions of this chapter or of any other law the enforcement of which is within the jurisdiction of the department, is guilty of a misdemeanor, and upon conviction shall, except as otherwise provided in this chapter, be punished by a fine of not less than twenty-five dollars, nor more than two hundred dollars, or by imprisonment for not less than one month, nor more than six months, or by both such fine and imprisonment, for the first offense; and by not more than one year's imprisonment for the second offense."

It is reasonably clear that the violations comprehended by the Legislature were statutes within the jurisdiction of the department, namely, the State department, to enforce. As accentuating the exclusion of violation of rules and regulations from classification as misdemeanors, it will be noticed that prior to the amendment of section 41 by chapter 77 of the Laws of 1932, in effect the 1st day of March, 1932, this section read as follows:

" § 41. Violation of chapter or rule a misdemeanor. Except as otherwise provided by the penal law, a person who by himself or another violates any of the provisions of this chapter or of any other law the enforcement of which is within the jurisdiction of the department, *or of any lawful rule of the department* is guilty of a misdemeanor."

By the amendment of 1932, the words " or rule " were omitted from the heading, and the italicized provision respecting rules and regulations of the department, namely, the State department, was repealed, so that violation thereof no longer constitutes a misdemeanor. Punishment for violation of such rules and orders of the department or its Commissioner is now limited to the penalty, provided by section 40 of the law, in a sum not to exceed $200 for each offense.

Nevertheless, and although it is conceded that violations of the rules and regulations of the State department do not constitute a crime, it is argued that because section 270 provides that a violation of the rule of a city department shall constitute a violation of article 22, it is within the purview of section 41 as a violation of " the provision of this chapter." I am of opinion that this phrase may not be so separated from its context as to afford a basis for such a strained construction. It must be read in the light of the limitation " or of any other law the enforcement of which is within the jurisdiction of the department," so that the section has application solely to those statutes which are within the jurisdiction of the *State* department. Nowhere in section 41, neither prior nor subsequent to the amendment of 1932, was there any reference to or contemplation of rules and regulations promulgated by a city department.

Even if it were to be held, in accordance with appellants' contention, that section 41 contemplated provisions of the chapter without limitation, there is no provision which has been violated by the acts for which the defendant has been convicted. The nebulous wording of section 270 constituting a violation of a rule as a violation of the entire article still leaves the appellants without a single specific provision of the chapter to which they can point as having been the subject of violation. Crimes are not to be imputed upon so indefinite and vague a foundation. A legislative body may delegate to an executive officer the power to make rules promoting the legislative object at hand, a violation of which will be deemed a crime, but only where the Legislature expressly and definitely provides. In *United States* v. *Eaton* (144 U. S. 677), an act known as the " Oleomargarine Act " required manufacturers and dealers to conform to certain standards and provided that

omissions of requirements or commissions of prohibited acts shall be punishable by payment of a penalty, with the further proviso that the Commissioner of Internal Revenue, upon approval, "may make all needful regulations for the carrying into effect of this act."* In holding that a violation of such regulations was not a penalized offense under the act, Justice BLATCHFORD wrote (p. 688): "It is necessary that a sufficient statutory authority should exist for declaring any act or omission a criminal offence; and we do not think that the statutory authority in the present case is sufficient If Congress intended to make it an offence for wholesale dealers in oleomargarine to omit to keep books and render returns as required by regulations to be made by the Commissioner of Internal Revenue, it would have done so distinctly, in connection with an enactment such as that above recited, made in § 41 of the act of October 1, 1890. Regulations prescribed by the President and by the heads of departments, under authority granted by Congress, may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offence in a citizen, where a statute does not distinctly make the neglect in question a criminal offence."

The distinction is drawn in *United States* v. *Grimaud* (220 U. S. 506, 519), where Justice LAMAR in discussing the *Eaton Case (supra)* observes: "But the very thing which was omitted in the Oleo-margarine Act has been distinctly done in the Forest Reserve Act, which, in terms, provides that ' any violation of the provisions of this act or such rules and regulations of the Secretary shall be punished as prescribed in section 5388 of the Revised Statutes as amended.' "

So, too, in *People* v. *McCann* (151 Misc. 792; affd., 242 App. Div. 515) the warden of a prison was indicted for willful omission to perform his duty as a public officer, but it appeared that the specific omission consisted of a violation of the rules and regulations established by the commissioner of correction of the city of New York, and it was held, upon authority, that the duty contemplated by the Penal Law (§§ 1841 and 1857) could not be invoked where an omission of duty was enjoined by the rules and regulations of a department.

Violation of the rules and regulations in question are punishable in the specific manner provided by section 270 of the law, and it is that penalty alone which, in the absence of specific mandate,

---

* 24 U. S. Stat. at Large, 212; U. S. Code, tit. 26, § 557.—[REP.

will be enforced. As Chief Judge CHURCH wrote in *People* v. *Hislop* (77 N. Y. 331, 333): "When a statute creates a new offence, and makes that unlawful which was lawful before, and prescribes a particular penalty and mode of proceeding, that penalty alone can be enforced. The offence in such case is not indictable." And further (p. 335): "In the absence of any provision declaring the act to be punishable as a crime, and without any light thrown upon the intent of the Legislature by previous legislation, I am unable to see how it can be held a crime without overturning fundamental rules of law, and establishing a dangerous precedent. The intent of the Legislature to elevate an act to the importance of a crime, cannot be imputed by loose inferences, and doubtful implications, but must be made to appear with reasonable certainty. We may guess that the Legislature intended to make all prohibited acts, criminal offences, but it is impossible to so affirm with any degree of certainty, and the fact that they did not so declare, is indicative that they did not so intend."

The danger of placing in the hands of an officer or board the power to create crimes by the mere promulgation of administrative rules and regulations is stressed in the *Eaton Case* (*supra*, p. 688), in *People* v. *Grant* (242 App. Div. 310; affd., 267 N. Y. 508), and in the recently decided case of *People* v. *Ryan* (267 N. Y. 133, decided April 16, 1935).

The respondent also contends that the department of public markets of the city had no jurisdiction to promulgate rules governing this market, for the reason that section 164 of the Greater New York Charter places that jurisdiction in the department of finance of the city. This contention raises a question of construction of article 22 of the Agriculture and Markets Law, and particularly section 263 thereof, as working by implication a repeal of the charter provision; but there is no occasion or necessity for a determination thereof at this time, as, in our opinion, section 41 of the Agriculture and Markets Law does not provide that a violation of the rules and regulations of a city department is a misdemeanor, and it would require a clear and explicit statutory provision to bring about that result.

The order of the Court of Special Sessions granting defendant's motion in arrest of judgment should be affirmed.

Present — YOUNG, CARSWELL and SCUDDER, JJ.; LAZANSKY, P. J., concurs in result.

Order of the Court of Special Sessions of the City of New York, Borough of Brooklyn, granting defendant's motion in arrest of judgment unanimously affirmed.